STATE v. H. F. CLAUDIUS.

(Filed 10 December, 1913.)

1. Indictment — False Pretense — Intent to Defraud — Motions to Quash.

It is only required that an indictment for false pretense allege that the act committed was with the intent to defraud (Revisal, sec. 3432), and a motion to quash and in arrest of judgment in this case was properly refused which was based upon an alleged defect in the indictment, that the word "fraudulently" was not used in connection with the words "designedly, falsely, and feloniously."

2. Same—Causal Connection—Form.

While it is necessary that an indictment for false pretense show a causal connection between the false representations and the parting with the property, no particular form of words is necessary, and it is sufficient if it is apparent that the delivery of the property was the natural result of the false pretense.

3. Indictment—False Pretense—Allegations Sufficient.

An indictment for false pretense, charging in substance that the defendant knowingly and designedly made false representations of a subsisting fact, with intent to defraud, as, in this case, the cost of construction of a house upon which he obtained a mortgage loan in an amount much greater than otherwise he could have done, is sufficient.

4. Trials—Instructions Refused—Appeal and Error.

A party to an action must obtain leave from the trial judge to submit prayers for special instruction after the argument has commenced, and from his refusal to consider them when so tendered, no appeal will lie.

S. *v.* CLAUDIUS.

5. **False Pretense—Written Statement—Statute of Frauds—Trials—Evidence—Corroborative.**

Upon a trial for false pretense, alleging that it had induced A. to obtain the money from B., a letter from A. to B. is competent when in corroboration of the testimony of A., who was a witness; and the fact that the representation was in writing does not preclude evidence of a parol representation.

6. **Trials—False Pretense—Evidence—Instructions—Appeal and Error.**

Upon a trial for false pretense, where the pretense relates to the misrepresentation of the cost of erecting a certain house upon which the defendant is charged with inducing a loan in a sum he could not otherwise have obtained, evidence of the value of the house, if erroneously admitted in this case, was rendered harmless by an instruction from the court that the jury should not consider it.

APPEAL by defendant from *Adams, J.,* at May Term, 1913, of BUNCOMBE.

The defendant was convicted of the crime of false pretense, upon the following bill of indictment:

"The jurors for the State, upon their oath, present, that H. F. Claudius, late of the county of Buncombe, on the first day of October, in the year of our Lord 1912, with force and arms, at and in the county aforesaid, unlawfully and knowingly devising and intending to cheat and defraud, did then and there unlawfully, knowingly and designedly, falsely and feloniously state, pretend, and represent to one Frederick Rutledge that he had sold in good faith a certain house and lot on Merrimon Avenue in the city of Asheville, North Carolina, for the sum of seven thousand five hundred dollars ($7,500); that fifteen hundred dollars ($1,500) of the purchase money had been paid in cash; that six thousand dollars ($6,000) of the purchase money had been secured by six promissory notes of one thousand dollars ($1,000) each, which said notes were secured by deed in trust on the said house and lot, and that said house and lot were worth the sum of eight thousand dollars ($8,000), and that the cost of the construction of the said house upon said lot was six thousand five hundred dollars ($6,500); and by the means of said false, fraudulent, and felonious statement and representa-

tions the said defendant H. F. Claudius obtained the sum of
five thousand five hundred dollars ($5,500) in money from the
said Frederick Rutledge; whereas in truth and in fact the said·
house and lot were not worth the said sum of eight thousand
dollars ($8,000), nor had the construction of said house cost six
thousand five hundred dollars ($6,500), nor had H. F. Claudius
sold said house and lot at the time of the false, fraudulent, and
felonious representations and statements, nor had he sold said
house and lot in good faith for the sum of seven thousand five
hundred dollars ($7,500), nor had fifteen hundred dollars
($1,500) been paid in cash on the purchase money of said house
and lot; but whereas in truth and in fact said house and lot were
not worth over three thousand or three thousand five hundred
dollars, and that the cost of construction of the said house upon
said lot was not over two thousand five hundred dollars, and
further that the pretended sale which said H. F. Claudius rep-
resented he had made of said house and lot to one Anna Kunse
was not *bona fide;* all of which statements, so made by the said
H. F. Claudius to the said Frederick Rutledge, were falsely,
fraudulently, and feloniously made, and by means of the said
statements and representations the said H. F. Claudius obtained
from the said Frederick Rutledge and B. H. Rutledge the sum
of five thousand five hundred dollars ($5,500) in money; said
false and fraudulent and felonious statements made by the said
H. F. Claudius to the said Frederick Rutledge were made with
the purpose and intent to cheat and defraud the said Frederick
Rutledge and the said B. H. Rutledge out of the said sum of
five thousand five hundred dollars ($5,500), contrary to the
form of the statute in such case made and provided, and against
the peace and dignity of the State."

The defendant moved to quash the indictment for that—

(1) It failed to allege that the act was "fraudulently done."

(2) It failed to state a cause of action.

(3) That there is no sufficient causal connection between the
representation alleged and the deceit and false pretense ·in the
bill of indictment, and for the main reason that it is indefinite
in first stating in the bill of indictment that the "statements
made by the said H. F. Claudius to the said Fred Rutledge"

were false pretenses; not showing the relation between Fred Rutledge and B. H. Rutledge, who is alleged in the bill of indictment as being defrauded by the representations.

The motion was overruled, and the defendant excepted.

The evidence for the State tended to show that the defendant offered to sell to one Frederick Rutledge six notes, each in the sum of $1,000, for $5,500. Rutledge stated that he had not the money himself, but that another person whom he know, one B. H. Rutledge, would probably purchase them. Frederick Rutledge, a witness for the State, testified that when the defendant offered him the notes, he told the witness that the notes had been taken in part payment of a recent sale of a house and lot; that the property was worth $8,000 or $9,000; that the house cost $6,500; that he had sold it for $7,500; that the purchaser had paid $1,500 in cash and that she had given the six notes of $1,000 each for the balance. The witness wrote to B. H. Rutledge, stating these facts as upon the representations made by the defendant, and the notes were purchased by B. H. Rutledge. The witness testified that in the transaction, and representing B. H. Rutledge, he relied upon the statements of defendant as true. The witness Rutledge further testified that some months after the purchase of the notes he went to the house on which the notes and mortgage were held as security, and that when he next saw the defendant and asked him about his representations as to the value of the property, the defendant said that the purchaser lived in New York and was amply able to take care of the notes. The witness learned that the purchaser was the mother of the defendant's wife. The defendant did not tell the witness who the purchaser was before he got the money. The witness further testified that the property was not worth more than $3,200, and another witness for the State, T. K. Davis, testified that the house could not have cost $6,500. And testifying on his own behalf, the defendant said: "I never made the statement to Frederick Rutledge or any person as to what this house cost. The fact is, I do not know."

The defendant excepted to the refusal to give certain prayers for instructions, as to which the court finds the following facts:

"On the second day of the trial the defendant's attorney ten-

dered certain prayers for instructions, after two of the counsel had addressed the jury on the day preceding. The prayers were not signed by counsel. They were handed up while the court was preparing the charge, and it had no opportunity to consider them. Under these circumstances the court did not give them, unless as they may happen to appear in the charge, and did not undertake to give them."

Judgment was pronounced upon the verdict, and the defendant appealed.

*Attorney-General Bickett and J. D. Murphy for the State.*
*J. Frazier Glenn for defendant.*

ALLEN, J. We have given due consideration to the zealous and learned argument of counsel for defendant in behalf of his client, but we find no error in the record.

The first objection to the indictment, that the word "fraudulently" is not used in connection with the words "designedly, falsely, and feloniously," is met by the statute (Revisal, sec. 3432), which says: "That it shall be sufficient in any indictment for obtaining or attempting to obtain any such property by false pretenses to allege that the party accused did the act with intent to defraud, without alleging an intent to defraud any particular person, and without alleging any ownership of the chattel, money, or valuable security; and on the trial of any such indictment it shall not be necessary to prove an intent to defraud any particular person, but it shall be sufficient to prove that the party accused did the act charged with an intent to defraud."

The intent to defraud is alleged, and with more particularity than is required.

It is true, as contended by the defendant, that the indictment must show a causal connection between the false representation and the parting with the property (*S. v. Whedbee,* 152 N. C., 774), but "no particular form of words is necessary; an allegation that 'by means of the false pretense' or 'relying on the false pretense,' or the like, is sufficient, where it is apparent that the delivery of the property was the natural result of the pretense alleged." 19 Cyc., 430.

The indictment alleges that the defendant falsely represented to Frederick Rutledge that the construction of a certain house cost $6,500, and, in one place, that by means of the representation he obtained from the said Rutledge, and in another from said Rutledge and B. H. Rutledge, $5,500 in money, which, in our opinion, satisfies the law.

The indictment also contains all of the elements of a false pretense. It charges that a representation was made as to a subsisting fact (the cost of the construction of the house); that the representation was false; that it was made knowingly and designedly and with intent to defraud; and that by means of the representation he obtained $5,500 in money.

We are, therefore, of opinion that the motions to quash and in arrest of judgment were properly overruled.

The defendant was not entitled to have his prayers for special instructions considered under the findings of his Honor that they were handed up on the second day of the trial, after two speeches had been made on the preceding day, and when the judge was preparing his charge and had no time to consider them.

We said at the last term, in *Holder v. Lumber Co.,* 161 N. C., 178: "After the argument commences it is well settled that counsel will not be permitted to file requests for special instructions without leave of the court, and no such leave appears to have been given in this case, for the court declined to consider the prayers after they were handed up."

The fact that there is a representation in writing does not prevent the introduction of evidence of a parol representation, and the letter of Frederick Rutledge to B. H. Rutledge was competent for the purpose for which it was admitted, to corroborate Frederick Rutledge, who was a witness.

The admission of evidence as to what the house was worth, if erroneous, was cured in the charge, in which the jury were carefully instructed that they could not consider any representation except the one as to the cost of construction.

Nor do we find any valid objection to the charge, which is remarkably clear, full, and accurate. If it is the subject of criticism at all, it is because it was too favorable to the defendant.

No error.