## STATE v. NATHANIEL E. HARGETT.

(Filed 22 May 1963).

**1. False Pretense § 1—**

Under the decisions of this State, in order to constitute false pretense there must be a misrepresentation of some subsisting fact, and while there need not be any token, promises of future action, even though unfulfilled, cannot be made the basis of a prosecution. G.S. 14-100.

**2. False Pretense § 2—**

An indictment charging that defendant, who owned a casket, a box in which it was to be placed, and a cemetery used for burial purposes, promised to bury the son of the prosecuting witness in the casket shown and to give the body a decent burial, and that defendant did not bury the child in the casket shown and in a separate grave, *held* fatally defective, since the averments other than those in regard to existing facts relate to promises for future fulfillment, which are insufficient basis for a prosecution for false pretense.

STATE *v.* HARGETT.

PARKER, J., concurring in result.

APPEAL by defendant from *Armstrong, J.,* November 26, 1962 Term, GUILFORD Superior Court, Greensboro Division.

Criminal prosecution for the felony of false pretense. Upon arraignment and before plea, the defendant challenged the sufficiency of the indictment by motion to quash. The court denied the motion. The defendant excepted. The defendant challenged the sufficiency of the evidence by timely motions for a directed verdict of not guilty, and excepted to the court's refusal to allow them. From a verdict of guilty and judgment of imprisonment for a term of three to ten years, the defendant appealed.

*T. W. Bruton, Attorney General, James F. Bullock, Asst. Attorney General for the State.*

*Adams, Kleemeier, Hagan & Hannah by Charles T. Hagan, Jr., for defendant appellant.*

HIGGINS, J.  The indictment in the case was drawn under G.S. 14-100: "If any person shall knowingly and designedly, by means of any forged or counterfeit paper . . . or by any false token, or other false pretense whatsoever, obtain from any person . . . money, goods, property, or thing of value . . . with intent to cheat or defraud any person or corporation . . . such person shall be guilty of a felony . . ."

The indictment in this case is of extreme length. In factual averments it attempts to allege certain of the defendant's acts in the past tense, especially as to his state of mind. Nevertheless, when fairly analyzed, the indictment charges that for $42.50 paid to the defendant, he agreed with Willie Poole to remove the body of Poole's infant son from the hospital to the defendant's funeral home, prepare it for burial, furnish a casket which was shown to the father, place the casket in a wooden box, and give the body a decent burial in a suitable graveyard; and that in truth and in fact the body of the infant son was not buried in the casket shown, not placed in a separate grave space in a suitable graveyard, was not given a decent burial; and that the defendant never intended to carry out the promises by means of which he obtained from Poole the sum of $42.50.

The arrangements for the burial were made on July 7, 1961. The State offered evidence that members of the Guilford County Sheriff's Department on December 18, 1961, discovered the body of the Poole infant wrapped in a plastic bag and buried in a delapidated pine box with two other colored infants in the defendant's graveyard near Pleasant Garden.

The only evidence of the actual burial was offered by defendant whose witness testified he dug the grave, fitted the wooden box into it, and assisted the defendant in placing the casket and the body in the grave.

The question presented by the appeal is the sufficiency of the indictment to charge "false pretense." The statute under which the indictment was drawn does not define false pretense. Hence, for definition, we must look to the courts. Our leading authority on the subject is *State v.. Phifer,* 65 N.C. 321: "It is settled that a *promise* is not a *pretense.* No matter what the form, or however false the promise, to do something in the future, it will not come within the statute. There must be a false allegation of some subsisting fact; but there need not be any token."

In *State v. Howley,* 220 N.C. 113, 16 S.E. 2d 705, this Court had this to say: "The constituent elements of false pretense as defined by the statute, and expressed in the *Phifer* case, *supra,* have been repeated without variation in numerous decisions of this Court, among which are: *S. v. Dixon,* 101 N.C. 741, 7 S.E. 870; *S. v. Mangum,* 116 N.C. 998, 21 S.E. 189; *S. v. Matthews,* 121 N.C. 604, 28 S.E. 469; *S. v. Whedbee,* 152 N.C. 770, 67 S.E. 60; *S. v. Claudius,* 164 N.C. 521, 80 S.E. 261; *S. v. Carlson,* 171 N.C. 818, 89 S.E. 30; *S. v. Roberts,* 189 N.C. 93, 126 S.E. 161."

"It is a well-established rule of criminal law that a false pretense or representation to be indictable must be an untrue statement of a past or an existing fact. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within false pretense statutes, even though they induce the party defrauded to part with his property." 22 Am. Jur., False Pretense, §14, p. 452; 168 A.L.R. 835.

In this case the Attorney General's brief contains the following frank statement: "The State does not concede that the bill of indictment is insufficient when tested by the above rules. (Referring to liberal construction of indictments.) However, the State recognizes that the language of the indictment raises a serious question as to whether or not the false representation of a past or subsisting fact has been sufficiently alleged." . . . "Although this Court has held that a 'state of mind' is a subsisting fact and will support actionable fraud in a civil action, we do not understand that this rule has been applied to criminal actions for false pretense."

In this case, at the critical time the defendant obtained the money, he had on hand the casket selected; likewise, the box in which it was to be placed. He also owned a cemetery used for burial purposes. All

other material averments consisted of promises for future fulfillment—not of existing facts. Under the authorities cited, the indictment failed to charge false pretense as defined by the courts. In these definitions a "state of mind" does not seem to have been considered a subsisting fact. Because of the fatal defect in the bill, this Court is required to arrest the judgment. *State v. Dunston*, 256 N.C. 203, 123 S.E. 2d 480.

Judgment arrested.

PARKER, J., concurring in result. I am of opinion that the bill of indictment in this case as drawn is defective. However, I believe that upon the facts here a valid indictment could have been drawn under G.S. 14-100, charging false pretense. I agree with the authorities that hold "that a state of mind is a fact, and that, therefore, a false statement as to the intention of accused is a false pretense as to an existing fact* * *." 35 C.J.S., False Pretenses, sec. 10, p. 819. Lord Justice Bowen said in *Edgington v. Fitzmaurice* (1885), Law Reports, 29 Chancery Div. 459, a classic statement which has been quoted with approval since by many courts: "There must be a misstatement of an existing fact: but the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is, therefore, a misstatement of fact." I realize there is authority to the contrary. C.J.S., op. cit., p. 819.

See also the quotation from 35 C.J.S., False Pretenses, sec. 9, in *S. v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762.